# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-18-171S-1 |
| | § | |
| YASSER SALEH OUWAD, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, and Heather Winter and Richard Hanes, Assistant United States Attorneys, and the defendant, YASSER SALEH OUWAD ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Superseding Indictment. Count One charges Defendant with Conspiracy to Transport Stolen Merchandise in Interstate Commerce, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than 5 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 3 years. *See* Title 18, United States Code, sections 3559(a)(4) and 3583(b)(2). Defendant

acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraph 19 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to possession and transportation of stolen merchandise in interstate commerce. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

> (a) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

> (b) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

> (c) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent

or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(d) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(e) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s). In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

10. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

5

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Federal law enforcement agents received information that Yasser Ouwad was a high-level fence in the business of buying over-the-counter (OTC) medications, which he knew to be stolen

from CVS, Walgreens and other retailers. As a result, in October 2015, Homeland Security Investigations (HSI) agents conducted surveillance of a series of meetings between Ouwad and an HSI Confidential Source (CS). The meetings resulted in the CS agreeing to work for Ouwad by going out of state to steal OTC. For this, Ouwad gave the CS $1,500 cash advance for travel expenses. Ouwad also provided a list of OTC items. Ouwad later texted the CS the address where the product should be shipped, directed to Santino Wholesale at 10878 Westheimer Road, #313, Houston, Texas. This location was the Mailroom, a mailbox facility used by Ouwad for the purpose of receiving stolen OTC.

Over the course of the investigation, HSI agents, CVS and Walgreens organized crime investigators and the CS would prepare shipments of purportedly stolen OTC to ship to Ouwad. In all, the government sent 5 shipments of purportedly stolen OTC medications from out of state to Ouwad, the retail value of which was $117,061.68. In return, Ouwad paid the CS $15,900.

The CS met with Ouwad on numerous occasions both before and after each shipment. Each meeting was audio and video recorded. At these meetings, the CS represented that he shipped stolen OTC to Ouwad from out of state. During each meeting between Ouwad and the CS, Ouwad gave the CS cash to prepay the CS's travel and other expenses and to pay for the shipped merchandise. Ouwad believed that the merchandise he received through the CS was, in fact, stolen.

On February 27, 2018, HSI agents executed a search warrant at the office and storage space of GPS Wholesale, Inc., a corporation owned and operated by Ouwad, located at 12440 Oxford Park Drive, B-102, Houston, Texas. Agents seized lists of OTC medications, with pill quantities and price lists. Additionally, agents discovered bags of trash filled with cotton cleaning pads, multiple types of OTC medication, retail anti-theft stickers from Walgreens and CVS, Home Depot

boxes, Ronsonol lighter fluid, heat guns, a blow dryer and shipping labels to Santino Wholesale originating from out of state.

CVS Organized Retail Crime investigators conducted an Electronic Article Surveillance (EAS) scan of the various boxes of OTC discovered within the warehouse. The EAS scans revealed multiple items activating, which indicated that the items were stolen. EAS is utilized by Organized Retail Crime investigators to scan for hidden security tags concealed within merchandise, which are normally deactivated after being purchased at the point of sale. Approximately $591,895 worth of stolen OTC was found in Ouwad's warehouse.

Agents also obtained search warrants for additional storage units and mailboxes rented by Ouwad for the purpose of storing stolen merchandise. Specifically, Life Storage, 12455 Westpark Drive, Unit E204, Houston, Texas, rented by Ouwad was searched, and agents discovered 7 boxes, with various kinds of OTC merchandise, including Tylenol, razors, toothbrushes, Bayer aspirin, etc., with a market value of $29,426.00. Agents also searched another storage unit leased by Ouwad, located at Life Storage, 12711 Westheimer Road, Unit C5, Houston, Texas. HSI seized a total of 8 boxes with stolen OTC medications, to include Claritin and Nexium, with a value of $46,261.00.

Agents further seized 3 boxes of stolen OTC with a market value of $16,557.19 at The Mail Room, 10878 Westheimer Rd. #108, Houston, Texas. HSI tracked the boxes back to shipments sent from Marco Hernandez-Maldonado from Altamonte Springs, Florida on February 26, 2018.

Agents also seized 8 boxes of stolen OTC merchandise, with a market value of $36,906.51, located at Postal & Packages, 12520 Westheimer Road A-1, #123, each addressed to Santino

Wholesale (or some variation thereof) and shipped from out of state. Specifically, the 8 boxes addressed to Box #123 were shipped from Luis Perez, a known alias of Fabricio Juarez, from Florida on February 25 and 26, 2018.

The government examined Ouwad's bank accounts. The examination showed that Ouwad sold the purportedly stolen OTC medication to Russelco, Inc., a corporation in Carteret, New Jersey. During the course of the charged conspiracy, Russelco paid Ouwad $4,665,861.56.

On February 26, 2018, the government seized Wells Fargo Bank account ending in x9763, opened in the name of GPS Wholesale. The Wells Fargo Bank account contained $132,241.84 and received incoming wire transfers from Russelco during the course of the conspiracy. These funds represent proceeds of the violations of 18 U.S.C. § 2314. Ouwad agrees to forfeit this money.

On September 5, 2018, the government seized Prosperity Bank account number ending in x1888, opened in the name of Masters Complete Service Center, LLC, a Texas limited liability company, owned and operated by Ouwad. The Prosperity Bank account contained $131,112.92 and received incoming wire transfers from Russelco during the course of the conspiracy. These funds represent proceeds of the violations of 18 U.S.C. § 2314. Ouwad agrees to forfeit this money.

On or about July 25, 2019, the government seized real property located on 14559 Beechnut Street, Houston, Texas 77083 (hereafter "Beechnut Property") in Houston, Texas, together with all improvements, buildings, structures and appurtenances, consisting of:

> 1.7030 acres (74,181 square feet) of land, more or less, situated in the H.T. & B. Railroad Company Survey, Abstract No. 416, Harris County, Texas, being out of and a part of that certain called 6.2475 acre tract of land conveyed to Actington Corporation as described in a deed recorded

under Clerk's File No. M188542 of the deed Records of Harris County, Texas, being more particularly described by metes and bounds

Save and except the following tract of land which was heretofore partially released by Tradition Bank on May 1, 2006.

Being a 0.58 acres (25,211 square feet) tract of land situated in the H.T. & B. Railroad Company Survey, Abstract No. 416, in Harris County, Texas; said 0.58 acre tract being more fully described by metes and bounds.

The government filed a Notice of Lis Pendens on the Beechnut Property on July 22, 2019. Ouwad made loan payments on the Beechnut Property from December 13, 2013 to April 7, 2017 out of the Prosperity Bank account number ending in x1888, in the amount of $22,964.08 during the course of the conspiracy. The Prosperity Bank account number ending in x1888 contained proceeds of the violations of 18 U.S.C. § 2314. Ouwad agrees to forfeit any interest he has in the Beechnut Property.

Ouwad also agrees to forfeit the stolen over-the-counter medication and health and hygiene products seized from: (i) GPS Wholesale, 12440 Oxford Park Drive, B-102, Houston, Texas; (ii) Life Storage, 12455 West Park Drive, Unit E204, Houston, Texas; (iii) Life Storage, 12711 Westheimer Road, Unit C5, Houston, Texas; (iv) Mail Room, Box 108, 10878 Westheimer Road A-1, Houston, Texas; and (v) Postal and Packages USA, Box 123, 12520 Westheimer Road A-1, Houston, Texas.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains,

11

conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to

facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

21. Defendant stipulates and agrees that the Wells Fargo Bank account ending in x9763 containing $132,241.84, the Prosperity Bank account number ending in x1888 containing $131,112.92, any interest he possesses in the Beechnut Property, and the over-the-counter medication and health and hygiene products seized from: (i) GPS Wholesale, 12440 Oxford Park Drive, B-102, Houston, Texas; (ii) Life Storage, 12455 West Park Drive, Unit E204, Houston, Texas; (iii) Life Storage, 12711 Westheimer Road, Unit C5, Houston, Texas; (iv) Mail Room, Box 108, 10878 Westheimer Road A-1, Houston, Texas; and (v) Postal and Packages USA, Box 123, 12520 Westheimer Road A-1, Houston, Texas, as listed in the Superseding Indictment, as well as

the Supplemental Notice of Forfeiture, the Second Supplement to Notice of Forfeiture, and the Third Supplement to Notice of Forfeiture, are subject to forfeiture, and Defendant agrees to the forfeiture of any interest he possesses in this property.

22. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea regarding the Wells Fargo Bank account ending in x9763 containing $132,241.84, the Prosperity Bank account number ending in x1888 containing $131,112.92, any interest he possesses in the Beechnut Property and the over-the-counter medication and health and hygiene products seized from: (i) GPS Wholesale, 12440 Oxford Park Drive, B-102, Houston, Texas; (ii) Life Storage, 12455 West Park Drive, Unit E204, Houston, Texas; (iii) Life Storage, 12711 Westheimer Road, Unit C5, Houston, Texas; (iv) Mail Room, Box 108, 10878 Westheimer Road A-1, Houston, Texas; and (v) Postal and Packages USA, Box 123, 12520 Westheimer Road A-1, Houston, Texas, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

23. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of the Wells Fargo Bank account ending in x9763 containing $132,241.84, the Prosperity Bank account number ending in x1888 containing $131,112.92, any interest he possesses in the Beechnut Property, and the over-the-counter medication and health and hygiene products seized from: (i) GPS Wholesale, 12440 Oxford Park Drive, B-102, Houston, Texas; (ii) Life Storage, 12455 West Park Drive, Unit E204, Houston, Texas; (iii) Life Storage, 12711 Westheimer Road, Unit C5, Houston, Texas; (iv) Mail Room, Box 108, 10878 Westheimer Road A-1, Houston, Texas; and (v) Postal and Packages USA, Box 123, 12520 Westheimer Road A-1, Houston, Texas, including by direct appeal or in a collateral proceeding.

## Fines

24. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

25. This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against his and that he is pleading guilty freely and voluntarily because he is guilty.

[SPACE LEFT INTENTIONALLY BLANK]

26. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on October 12, 2021.

_____
Defendant

Subscribed and sworn to before me on October 12, 2021.

NATHAN OSCHNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Jennifer B. Lowery
Acting United States Attorney

By: _____       _____
Heather Winter                                              Mike DeGuerin
Assistant United States Attorney                 Attorney for Defendant
Southern District of Texas

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. H-18-171-1 |
| | § | |
| YASSER SALEH OUWAD, | § | |
| Defendant. | § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines, which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____  10/12/21
Attorney for Defendant            Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____  10/12/21
Defendant                         Date

17